We'll begin with the first case, which is Jacobovich v. State of Israel. Counsel, are you both here? Here for appellate. Okay, that's Ms. Kundar. Yes. And for the appellees? This is Sam Lonergan. I'm here for the State of Israel. And Sandra Houser. I'm here for the Computer Shared Defendants. Thank you. All right. Thank you. Okay. So, Ms. Kundar, you're up. Am I right? You've not reserved any time for rebuttal? I have reserved two minutes. Oh, two minutes. Okay. All right. So you've got three minutes. The courtroom deputy will let you know sort of a minute before you hit the different deadlines. So she'll let you know at the two-minute mark that you're getting close to three, and then she'll let you know at the one-minute mark as you're getting close to your initial time. All right? I understand. Good. Okay. Let's proceed. May it please the court, my name is Kathleen Kundar, counsel for the appellants. I'll begin with Israel's waiver of its sovereign immunity in the prospectus. The district court concluded that Israel's explicit waiver of foreign sovereign immunity in the prospectus filed with the SEC does not apply to the internationally sold bonds at issue in this case. The linchpin of the district court's decision is its conclusion that the prospectus only applies to bonds sold in the United States. The district court wrongly interpreted the prospectus, which is a matter of law. The waiver of sovereign immunity in the prospectus is clear and unambiguous. The bonds which it covers are not limited in any way. The district court reached its incorrect conclusion by relying on language in the prospectus referring to a separate underwriter. We'll call it IBI, Israel Bonds International. And that underwriter is for bonds sold outside the United States. That's mentioned at page A175 of the joint appendix. But there is no language in the prospectus or in the record that says whether the prospectus was used outside the U.S. or not used. The wording in the prospectus does not say that IBI will not provide a copy of this prospectus. It says prospectuses, and that's a quote. The word prospectuses and various forms are available outside of the United States from local underwriters. Now, at the same time, the record shows that the prospectus is available on the Internet at www.israelbonds.com, and we know through Edgar. Now, in the decision, the district court. Excuse me. Do you have one more minute? What is clear in the text of the prospectus is that it includes a waiver of sovereign immunity for, quote, any bonds of any issue, not just bonds sold in the U.S. This conclusion is bolstered by the fact that in the prospectus, when Israel wanted to make clear what the waiver did not cover, it expressly stated that. At page A176, the prospectus states, Israel has not waived its sovereign immunity in connection with any action arising out of or based on United States federal or state securities laws. The situation we have here is similar to that presented in this court's decision in Capital Ventures v. Republic of Argentina. In that case, the district court dismissed the claims on bonds issued by Argentina under German law for lack of subject matter jurisdiction. The Capital Ventures case is analogous because the waiver had broad and clear language, and it referred to a waiver as to any court. This court refused to conclude that the foreign selection of a court in Germany restricted that language. In Appellant's case, we have the language that the waiver applies to any bonds of any issue, and that language is not restricted elsewhere in the prospectus. The prospectus never says that it only applies to bonds in the U.S. The district court's interpretation of the prospectus that it applied only to domestically sold bonds is not supported by the language in the prospectus. The correct interpretation is that the prospectus is not limited to bonds sold in the U.S. Consequently, Israel's explicit waiver covers the action that Appellant's filed in the Southern District, and the district court should be reversed. All right, let's take a break here, and we'll hear – I'll first allow Judge Calabresi to ask some questions. Judge Calabresi? Yeah, this is Guido Calabresi, and my problem is I see no evidence in the record, whatever, that the U.S. prospectus had anything to do with the purchase of these bonds. It seems these bonds were not purchased in the United States. There was an international prospectus, and the international prospectus doesn't say anything about waiver. So what evidence is there that your client was in any way affected by this prospectus that you are – that you're talking about? It seems the whole thing had to do with other countries, maybe Canada, and that you somehow brought it in the United States because you missed the timing on Canada. Where am I off? Your Honor, first of all, there's no claim here dealing with somehow the prospectus had language that affected the purchase so that someone was misled. What's happening here is that the appellants were looking for the remedy and had, in fact, had been asking representatives of Israel, what do I have to do to collect on these bonds? And the prospectus that was publicly available said that there is a waiver of sovereign immunity for actions on bonds of any issue that is filed with other districts. And so that was what my clients relied on in pursuing a remedy to collect on the bonds, and no one from Israel – Where is there any evidence that your clients relied on this prospectus? In seeking their remedy, their attorney looked at the prospectus that she found in Argentina, and she saw that she could sue in the Southern District of New York where there was a waiver of foreign sovereign immunity. That's what happened. That's in the record under the declaration from the appellant's Argentine lawyer. On page A-260 of the record, she says she saw the prospectus that we're looking at, and she understood that that would enable her to bring the case in the Southern District because foreign sovereign immunity was waived here on any bonds of any issue. And that was in a prospectus for Jubilee bonds, which is the kind of bonds that she was trying to collect on. And in fact, she did collect on the second bond. Israel paid it properly but refused to correct the mistake it made on the first bond, even though the evidence is clear that Israel believed our clients were the proper heirs to the first bond. Certainly, they showed that by paying the second bond after they reviewed the proof. Do you have additional questions, Judge Calabresi? Nope. All right. Judge Wesley, do you have any questions for Ms. Kondal? Ms. Kondal, what do you make of the language in A-156-157 that says, With any use of this prospectus supplement and the accompanying prospectus, including the documents incorporated by reference therein, other than in connection with the offering of the bonds, the offering of the bonds is unauthorized. I mean, that ties in with Judge Calabresi's question. Isn't that prospectus specifically tied to the offering of the bonds that were sold in the United States? It speaks in that same page. I believe you're looking at A-156. No, A-156-157. Oh, A-156. Well, that's the prospectus supplement. We're not contending that our clients relied on the prospectus supplement. Well, your clients didn't rely on anything. Your clients found this after the fact. Your claim's not in contract, is it? On the bonds, yes. Well, then I guess I renew my question that Judge Calabresi gave. Where's your proof that in some way that your client or your client's predecessor had that document and relied upon that document at the time that he bought the bond? How is it part of the bargain? We don't know. The fact that you find it on the Internet doesn't make it part of the bargain. When the publicly available waiver speaks of bonds as any issue, the conclusion has to be that this applies to the bonds that our clients had. And that when they were seeking their remedy, they saw that in a jubilee bonds prospectus, this is what is written. And that same prospectus does not limit itself to bonds only sold in the U.S. Okay. Thank you. The prospectus is very general. The prospectus supplement is a separate thing. Thank you. I have no further questions. All right. I have no questions on the prospectus, but you do have some additional time. Did you want to speak to any other issues? There were others certainly in your brief. Certainly. Let's talk about our estoppel point, because the appellant should be permitted to proceed in the Southern District under the law of estoppel. As covered in detail in our brief, Israel expressly waived its sovereign immunity as to bonds purchased anywhere in the world. This is shown by a prospectus filed in Canada for Canadian purchase bonds. There's a prospectus that we're looking at now in the fiscal agency agreement, which is referred to in the forms of the bonds. There is a waiver of sovereign immunity. And so the only question really that is out there is where's the proper place to sue when Israel argues that the proper place is Ontario, Canada, which is what Israel did argue to the district court. And under the law of estoppel in Costico versus new Rochelle radiology, the court makes clear that an estoppel can arise from a misrepresentation or remaining silent with the duty to speak. Now, in 2014, appellant's Argentine counsel asked Israel's agent, IBI, for documents pertaining to the first bond and how to obtain payment on the first bond. And Argentine counsel did that weeks after she learned the first bond had been wrongly paid to another party. Ms. Condor, can I interrupt you? This is Judge Sullivan. But with respect to estoppel, I mean, estoppel is not an exception under the Foreign Sovereign Immunities Act, right? We think that the way to do it is you have to parse this out. There's a waiver as to bonds purchased anywhere in the world through various documents that can be clearly seen. The question then becomes where do you have to bring an action to take advantage of it? Ms. Condor, Judge Calabresi has a question. Certainly. But hasn't the Supreme Court said that there is no – that estoppel does not apply to the Foreign Sovereign Immunity Act? So that even if we were to agree with you that what Israel did brought about estoppel, isn't that not something that affects the Foreign Sovereign Immunities Act under the Supreme Court's holding in Samantha? No, it affects forum selection. Forum selection is not waiver of sovereign immunity. It's where can Israel be sued. They expressly waive the Foreign Sovereign Immunity as to actions under any bonds of any issue. But where those claims are brought – in fact, it boils down to two jurisdictions when you take all the waivers together. So what seems to be happening is that there's two places to sue. The place in Canada was hidden from our clients. This is not part of waiving sovereign immunity. It's the forum to sue. And since it was hidden, then certainly that leaves our clients with the remaining publicly known venue of suing in the Southern District. All right. Let me just ask the courtroom deputy, how are we doing on time? Well, I think we're probably there on my phone. I think we've hit it. All right. So Ms. Kundar, you reserve two minutes. I'm sorry, Josh. Yes, 11 minutes I have. Oh, we're at 11 minutes. Okay. And I think you had reserved two, so we're over. So Ms. Kundar, we'll give you two minutes after we've heard from your adversaries. Thank you. Thank you. So, Mr. Lonergan, you're going first. Is that correct? Yes, sir. And you've got eight minutes, and Ms. Hauser then has four. Is that right? That's correct, sir. Okay. You may proceed. You've got three minutes uninterrupted. Good morning, Your Honors, and may it please the Court. Sam Lonergan for Defendant Appelli, the State of Israel. Judge Buchwald correctly held that the waiver that's contained in the prospectus for the Seventh Series Jubilee Bonds does not apply to the bonds at issue here. Judge Buchwald made two important factual findings in reaching that conclusion, and those are factual findings that this Court reviews for clear error. The first factual finding was that the bonds at issue here were purchased internationally. The second important finding that Judge Buchwald made is that the prospectus for the Seventh Series Jubilee Bonds applies to the sale of the bonds in the United States only. Judge Buchwald made those conclusions on the basis of her review of the prospectus itself, court records on the Panamanian litigation instituted by the appellate's grandfather, affidavits submitted in connection with these motions by Computershare, the Development Corporation of Israel, as well as the attorney for the appellants. Appellants now claim that the waiver contained in the Seventh Series prospectus should be read more broadly and that the term, quote, the bonds, close quote, and the use of that term means that the waiver contained in that prospectus applies to all Israel bonds, whether or not they're Jubilee Bonds or Seventh Series Jubilee Bonds, whether or not those bonds were sold in the United States or outside of the United States, and regardless of when those bonds were sold. Appellant's argument should be rejected. The scope of the prospectus clearly applies only to Israel's issuance of Seventh Series Jubilee Bonds in the United States, and as such, the use of the term the bonds and the waiver that applies to the bonds that's contained in that document extends only as far as the scope of the prospectus, which is the Seventh Series Jubilee Bonds sold in the United States. As Your Honor correctly pointed out when asking Ms. Kundra about this, the language in the prospectus supports Judge Buchwald's conclusion that the Israel may sell the bonds outside of the United States through additional underwriters or dealers, as will be described in the applicable prospectus supplement.      The prospectus does not apply to Israel. The record is supported by a declaration submitted by William Moldy, the Vice President of Operations for DCI, who attested that the prospectus is for use only in the United States. It's supported by the fact that the prospectus cites to the computer-share U.S. entities as the fiscal agents, and those entities are the fiscal agents solely for purposes of bonds sold in the United States, and there is no evidence in the record, and Plaintiff can point to none, that the appellant or their grandfather relied on the prospectus when purchasing the bonds at issue here. Contrary to appellant's claims, Israel cannot get stopped from reserting foreign sovereign immunity. The Foreign Sovereign Immunities Act is the sole basis for attaining jurisdiction of Israel in the United States courts. It has been described by the Supreme Court as a comprehensive statute. Jurisdiction exists as to Israel only if an exception to the Foreign Sovereign Immunities Act applies. It would take an act of Congress to change that. Even if estoppel did apply here, Judge Buchwald was correct. Israel had no duty to provide the appellants with any information or advice regarding a prospectus or the fiscal agency agreement, and more importantly, there is ample, abundant evidence that appellants received historically notice that both the prospectus and the fiscal agency agreement that they assert provides jurisdiction here do not apply to the bonds. All right. Let's take a pause there and give the panel some opportunities to ask questions. Judge Calabresi, do you have any questions for Mr. Lonergan? Yeah, just I'm not sure it makes any difference, but why didn't Israel tell these poor people that they should sue in Canada? I mean, the whole thing would have gone away if they had brought their case wherever against the right party in Canada. Why didn't Israel tell them? I'm not sure it matters, but I'm just curious. Thank you, Your Honor. Israel has maintained throughout the course of this litigation that the appellants withstanding to bring suit under it, and as such, the waiver of foreign sovereign immunity contained in the international fiscal agency agreement does not provide the appellants with the ability, does not support the concept that Israel has waived its sovereign immunity with respect to Canada. I understand that. That wasn't really my question. My question more to the side. It doesn't matter. Let's go on. And I have not conducted a full-scale analysis of where jurisdiction may lie for purposes of the appellants bringing these claims, but I would note that they have filed suit in an Argentinian court against their grandfather seeking both criminal and civil liability, and my interpretation is that the appropriate suit and the appropriate forum through which to litigate this issue. All right. Judge Wesley, do you have any questions for Mr. Lonergan? Yeah. Mr. Lonergan, I presume that I'm focusing on the waiver language, which is what your opponents really seem to vilify. The language says in any that Israel will irrevocably agree not to assert any defense of immunity on immunity, including foreign sovereign immunity from jurisdiction which might otherwise be entitled in any action arising out of or based on the terms of the bonds. And so you're saying that the term the bonds refers to the bonds within the prospectus, correct? Yes, sir. The bonds are clearly described. No, go ahead and finish. I apologize. Yes, sir. The bonds are clearly described in the prospectus, and it's Israel's position that any waiver of sovereign immunity pertaining to the terms of the bonds described in the document, and that's consistent. Sorry. Go ahead. No, it's my fault. I get too anxious. I apologize. I'm done. Thank you. Okay. Well, your opponent, though, then goes on and says the rest of that sentence reads, which may be instituted by the owner of any bonds of any issue in any federal court in the Southern District of New York, et cetera, et cetera. Why that language? Why is it may be instituted by the owner of any bonds of any issue? I mean, that means it's – I don't understand why the term of any bonds or any issues in there. It introduces to me some ambiguity, doesn't it? Your Honor, Israel's position is that the prospectus and the prospective supplement need to be read as a whole, and I believe the language you're saying is that the prospectus pertains to the seven series jubilee bonds, but it also describes that there are multiple issuance dates that will apply to the bonds, and they're described in the prospectus. It also – the prospectus also describes multiple classes of bonds that will be issued under the seven series jubilee series, and I believe the language, Your Honor, throws back to that. I see. So you're saying that the term of any bonds of any issue is a reference to subsets of, quote, the bonds. Yes, Your Honor. Okay. All right. Okay. Yeah, because I've always had trouble – well, not always. I've had trouble understanding why they had that language in there, but that makes – I understand that. Okay. Thank you very much. Okay. I have no questions. I have no questions beyond what's been asked. Is there anything else you'd like to say in your remaining time? Your Honor? Yes, Your Honor. I would like to point out that with respect to appellant's implicit waiver argument, Judge Buchwald also correctly exercised her discretion and held that Israel's participation in a separate 28 U.S.C. 1782 proceeding did not constitute an implicit waiver. That exception is to be construed narrowly and only applied where there is unmistakable and unambiguous evidence of the sovereign's intent to waive its immunity. Israel has asserted since the very outset of this action that it is immune from suit, and Israel's decision to assist a foreign litigant by responding to a 1782 subpoena constitutes only a limited waiver of Israel's foreign sovereign immunity for purposes of assisting a foreign litigant. To hold otherwise would be inconsistent with the aims of 1782, which include assistance of foreign litigants as well as the encouragement of international cooperation. To hold that Israel's participation in that proceeding waives its sovereign immunity in a separate proceeding would introduce a chilling effect in terms of foreign sovereign's participation in 1782 proceedings and be inconsistent with the aims of the statute. All right. Okay. Thank you, Mr. Lonergan. We'll now hear from Ms. Hauser. Thank you, and good morning, Your Honors. This is Sandra Hauser of Denton on behalf of, I believe, the computer-shared defendants. Our position is that Judge Buchwald's decision in this case should be affirmed in its entirety. In my limited time here today, I want to address just two points. First, the computer-shared defendants were properly dismissed from the case as having absolutely nothing to do with these international bonds. And second, to address the district court's proper dismissal of any further relief, including permission to plaintiffs to amend the complaint to add computer-shared trust company of Canada as a defendant. On the first point, the dismissal of the computer-shared U.S. entities was straightforward and legally incontrovertible, as has been discussed here this morning. The computer-shared U.S. entities were not the fiscal agents for the bonds at issue in this case. The document the plaintiffs attached to their complaint, the U.S. fiscal agency agreement, itself establishes that fact by clearly stating that the computer-shared U.S. entities are the fiscal agents only for bonds sold in the U.S. and sold to a U.S. bondholder. Here we have neither. To Ms. Condar's point that there was something hidden about who the fiscal agent was. There's abundant evidence in the record, including from plaintiff's Argentinian lawyer who admits, and this is at A-264 of the appendix, and a letter attached at A-277. Plaintiff's counsel was told that these were international share, international sales through IBI and that computer-shared Canada was the fiscal agent. They also received a check in 2014 from computer-shared trust company Canada. There was never anything hidden about that fact. And in fact, the very first time that plaintiffs contacted computer-shared U.S. by serving a subpoena in January of 2019, they were specifically told that they had subpoenaed the wrong party and that the computer-shared U.S. entities had nothing to do with these bonds. And that was pre-suit. On the second point, your Honor, with respect to leave to amend computer-shared Canada is not a defendant in this case. You have one more minute. Thank you. There was no formal motion to amend. There are three reasons that the district court found that it would be futile to permit plaintiffs, essentially a do-over to add computer-shared trust company of Canada very quickly. There's no personal jurisdiction as to this Canadian entity that has no U.S. place of business, no U.S. employees, no transaction of business in New York. There's no subject matter jurisdiction where they to bring suit as a foreign party against another foreign party. And thirdly, for the reasons we outlined in a brief, there's simply no claim because there's no standing to bring suit against this fiscal agent entity under the international fiscal agent agreement. So there's simply no standing to bring suit. So I'm just going to, I'm just going to touch on briefly briefly on the personal jurisdiction issues. Plaintiffs point primarily in their brief to the fact that there was a wire that was. Sent from computer share trust company of Canada to the estate of Manuel. Which is the, the bond owner. And the wire was sent to an account associated with that bond in Panama. And happened to go through a New York bank. I think as, as your honors will recognize the attempt to assert jurisdiction over a foreign entity. Because of the single bank transaction. Is not a suitable basis for personal jurisdiction. Kind of classically within the definition of random fortuitous and attenuated contacts. The, the, the, the, the, the, the, the, the, the, the, the, the, the single wire transaction. That single wire transaction was not even alleged to be improper or at the crux of the dispute because plaintiffs don't allege. The payment of these bombs to the estate of Manuel. Jacobovits was improper. They allege that their grandfather commandeered the estate and that Panama account. And so therefore the payment reached the wrong party, but. So the, going back to the main point here, there just simply is no jurisdiction over this Canadian company in the U S and there's, there's no, there's no claim and would be no subject matter jurisdiction. All right. Let's pause there. Judge Calabresi. Do you have any questions from his house? Yes. My only question is why are you arguing about. The amendment is computer chairs in Canada. If you have nothing to do with them, then. What are you there arguing about the very fact you're arguing. So just that there is some kind of link. I just don't understand what your standing is. What it is that you are arguing about. Somebody who is not before the court. And who is supposedly not connected to you. So what the heck are you arguing that. Well, thank you. Thank you, your honor for the question. Okay. Thank you. Plaintiff. Again, made no formal motion to amend that suggested that they would amend the complaint to add primarily additional claims. Against the computer share us entities. And also raised the specter of, of adding computer share. Trust company, Canada. The district court address that I don't represent. At this point in time before this court, the non parties, however, they're an affiliate of my client. And we wanted to make sure that we address all of the arguments that plaintiff had put before the court. And arguing for full dismissal of this case, not a lingering piece of it. Judge Wesley, do you have any questions for me? No, thank you very much. Nor do I. So thank you. Okay.   Thank you. Thank you. We'll now hear from his Cunder. For two minutes. Thank you. I'd like to go to mr. Lonergan's assertion that they relied on the declaration of mr. Mulvey of DCI. Mr. Mulvey declares. That the. I'm putting that in quotes. Was intended for use in connection with sales of bonds only in the United States. That's what he says. The problem is that mr. Mulvey at paragraph three of his declaration. Defined us perspectives. As the perspectives filed with the sec that my client in Argentina saw. And he combines it. With the perspective supplement. In other words, When he says that it was. Intended for use in connection with sales of bonds only in the United States. He's talking about the combination. Which we have never said the combination is what we're our client looked to. Our client looked at simply the perspectives filed. In the U S not the supplement perspectives. For the. Provision of the waiver. So, Now the Mr. Lonergan also. It talks about that. Excuse me. I'd like to go to judge Wesley's point. About the mention of the bonds and using sort of a generic word. The bonds. And if you look at the perspectives. It repeatedly have one more minute. It repeatedly. Refers to bonds lowercase. When it's talking about bonds sold by IBI. Or bonds sold by DCI. Or bond sold in Canada. It's just a generic term. The bonds, any kind of bond. Now we, we, we are. Having a Jubilee bond here, by the way, that's what. The appellants. We're the owners of a Jubilee bond. Okay. And that takes me to miss Hauser statement. When she said that we don't complain that payment was improper. We certainly do. That's their position. That payment was not improper. We believe the payment was not properly made. There wasn't the care that would be required for a securities intermediary. To a corporate account in Panama. With respect to an estate that was pending in Argentina. It's certainly raised red flags that were never checked on. Finally, Mr. Lonergan said that, well, the IFA doesn't support. A waiver. Or rights for our clients. Well, if that's the case, well then. More than ever the broad language of the waiver. That says. Bonds of any issue. In any action brought in the Southern district. That there is a waiver of foreign sovereign immunity. So if it's not available anywhere else, that makes it much more clear that this waiver was intended to have. Broad application. For bonds purchased. In other places in the world. Besides the United States. Let me just see if the panelists have any questions. In light of the rebuttal. Judge Calabresi. Judge Wesley. No, thank you. Okay. So thank you. All right. Ms. Condor. Thank you all. That was well-argued.